**L. S. DOUGLAS, Plaintiff-Appellant,**

v.

**Harold W. HOEH, Sheriff of St. Louis County, and Reliance Insurance Companies, Defendants-Respondents.**

Nos. 39983, 39984.

Missouri Court of Appeals, Eastern District, Division Four.

Feb. 19, 1980.

Raymond Howard, Jr., St. Louis, for appellant Douglas in Case No. 39983 and for respondent Douglas in Case No. 39984.

Don R. Williams, Associate County Counselor, Thomas W. Wehrle, St. Louis County Counselor, Clayton, for appellants Hoeh and Reliance Ins. Co. in Case No. 39984.

SATZ, Judge.

This is an action for damages against a sheriff and the surety on his bond for the making of a false return.

In Count I of a two Count petition, plaintiff L. S. Douglas sued defendant Harold W. Hoeh, for actual and punitive damages on the alleged grounds that defendant Hoeh, as Sheriff of St. Louis County, had made a false return to the service of summons and petition in another lawsuit, which caused a default judgment to be entered in that suit against plaintiff, without notice to him. In Count II, plaintiff alleged defendant Reliance Insurance Companies[1] was Sheriff Hoeh's bonding company and, thus, was vicariously liable for the acts of the Sheriff. Plaintiff obtained a jury verdict for actual damages in the amount of $10,-000.00 against both defendants. In their joint motion for a new trial, defendants asserted, among other things, that the verdict was against the weight of the evidence and that the verdict directing instruction against each defendant was prejudicially erroneous. The trial court sustained defendants' motion for a new trial on the grounds that the verdict as to damages was against the weight of the evidence, granted a new trial on the issue of damages only and overruled defendants' motion in all other respects.

Plaintiff appeals, contending, in several different arguments, that the trial court erred in setting aside the verdict as to damages. Defendants also appeal, contending, among other things, that plaintiff's verdict directing instructions were prejudicially erroneous. Finding defendants' arguments against plaintiff's verdict directing instructions to have merit, we reverse and remand on that ground and, thus, do not reach plaintiff's arguments against the trial court's order granting a new trial on damages only. We discuss those facts pertinent to our decision and we discuss such other points raised that are likely to arise on retrial.

According to plaintiff's evidence, he and a Sonja Douglas were married in 1960, and they were divorced in 1972. In April, 1975, a default judgment was entered against plaintiff and Sonja in the Magistrate Court of St. Louis County. The return to the summons in that case showed that a deputy sheriff employed by defendant Hoeh had served plaintiff by leaving a copy of the summons at plaintiff's "usual place of abode . . . with a member of his family over the age of fifteen years, . . . his mother-in-law . . .". That service was obtained at 10631 Linnell, St. Louis County, the home of plaintiff's ex-mother-in-law. However, plaintiff's evidence showed that, at the time of the service of summons, he was living at his home in the City of St. Louis, that he was on unfriendly terms with his ex-mother-in-law and that he had never lived at or even been inside the Linnell residence of his ex-mother-in-law. In addition, plaintiff's ex-mother-in-law did not recall being served with a summons, for either her daughter, Sonja, or plaintiff.

Basing his theory of recovery on the filing of a false return, plaintiff's verdict director against defendant Hoeh, Instruction No. 3, required a finding for plaintiff, if the jury believed:

"First, a Sheriff's deputy did not serve a summons upon plaintiff or a member of his household, and

Second, a Sheriff's deputy made a false return, and

Third, plaintiff was thereby damaged."

Plaintiff's verdict director against defendant Reliance Insurance Company, Instruction No. 4, was identical to Instruction No. 3 with the added finding:

"Fourth, defendant Reliance Insurance Company was the holding company of defendant Hoeh."

Defendants contend these instructions do not properly submit the ultimate facts upon which the jury could find the return in issue to be false. Stated otherwise, defendants argue that these instructions fail to give

---

1. This corporate defendant is referred to throughout the entire record by all parties, interchangeably, as "Reliance Insurance Companies" and/or "Reliance Insurance Company".

the jury any real direction but, on the contrary, give the jury a "roving commission" to speculate and determine, on their own, why and in what manner the return was false. We agree.

■ There is no applicable MAI instruction for the charge of a false return, and, thus, a verdict directing instruction must be drafted in compliance with Rule 70.02(e), which provides that such "an instruction shall be simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts". In general, the instructions in question meet these requirements. However, the instructions still must be unambiguous and clear to a reasonably intelligent jury, e. g., Wims v. Bi-State Development Agency, 484 S.W.2d 323, 325 (Mo. banc 1972), and the instructions still must tell the jury what ultimate facts have to be determined in order for the jury to return its verdict. See e. g., R–Way Furniture Co. v. Powers Interiors, Inc., 456 S.W.2d 632, 639 (Mo.App.1970). The instructions in question fail to meet the latter requirements.

■ As noted, plaintiff's theory of recovery was based upon the filing of a false return. A false return has been defined as "a return to a writ made by a ministerial officer in which is stated a fact contrary to the truth and injurious to a party having an interest in it". State v. Morant, 266 S.W.2d 723, 726 (Mo.App.1954). Thus, a cause of action based upon a false return has three basic elements: (1) the true facts, (2) a misstatement of those facts in the return, and (3) injury resulting from the misstatement of the true facts. A proper verdict directing instruction must, at least, submit the ultimate facts which define these elements. Applying this pattern to the instant case, the plaintiff's verdict directing instructions must, at least, require the jury to find first, the deputy sheriff did not serve summons in a defined manner,[2] (the "true" facts according to plaintiff's evidence), and, second, the deputy sheriff made a return that he did serve summons in the manner defined in the first paragraph (a misstatement of facts in the return contrary to the "true" facts) and, third, plaintiff was thereby damaged. See Moore v. Securities Credit Co., 475 S.W.2d 430, 433 (Mo.App.1971). Under such a submission, if the jury finds the return describes conduct contrary to the conduct that it finds actually took place, the jury is compelled to conclude the return was false. Obviously, a finding of what conduct was stated in the return is an essential pre-requisite to a determination of whether that conduct differed from the conduct that actually took place. But plaintiff's instructions failed to submit this essential finding to the jury and, thus, the instructions failed to instruct the jury on the ultimate facts essential to the jury in reaching its verdict. Without this submission, the jury was given no effective direction, but, rather, was given a roving commission to consider whatever facts they pleased in order to reach their determination that the return was false. Therefore, we find plaintiff's verdict directing instructions to be erroneous. E. g., Vasquez v. Village Center Inc., 362 S.W.2d 588, 595–6 (Mo.1962); Moore v. Quality Dairy Co., 425 S.W.2d 261, 266 (Mo.App.1968).

To counter this reasoning, plaintiff contends that in State v. Morant, supra, we approved an instruction similar to the present instructions. Plaintiff's reliance on the Morant case is misplaced. In Morant, a

**2.** As previously noted, plaintiff elicited testimony from the deputy sheriff that he had served the summons and petition on plaintiff's ex-mother-in-law at her Linnell address, but plaintiff, also, elicited testimony from his ex-mother-in-law that she had not been served any summons at all. Plaintiff's verdict directing instructions can be sensibly read to encompass the testimony of either or both of these witnesses, i. e., that the return states a fact contrary to the truth because (1) there was no service in the manner reported or (2) there was no service at all. Thus, these instructions do not specifically indicate which of the two factual bases plaintiff actually chose to submit to the jury in support of his theory. Defendants do not complain about this apparent inconsistent testimony nor do they suggest a choice had to be made between these two set of facts. Thus, we do not comment on the questions which may have been raised about these circumstances.

deputy constable stated in his return that he served a summons on a member of plaintiff's family over the age of fifteen years, but plaintiff's evidence showed that the member of the family served, a son, was fourteen years old. Plaintiff's verdict director required the jury to find, among other facts, that the deputy constable "did not serve summons upon a member of [plaintiff's] family *as stated in his return to said Magistrate Court*" (emphasis added). *Id.* at 727. Thus, as can easily be seen, this instruction is similar to the form of instruction previously discussed in this opinion and it differs from plaintiff's verdict directing instructions because it properly requires the jury to determine, as one of its findings, what manner of service was reported in the return.

Plaintiff also argues that to cure the defect in issue would require him to submit detailed evidentiary facts contrary to Rule 70.02(e). In addition, plaintiff argues there was no need to define "false return" because "the jury was fully informed as to what a sheriff's return is" and "false" is a commonly understood word; or, alternatively, plaintiff argues that if the term "false return" required greater definition, defendants were required to offer an appropriate definition instruction.

These arguments misconceive the defect in issue. The instructions in question were not insufficient in detail or in definition of terms. For example, there was no need, and it may well have been improper, for plaintiff to submit specific facts pertaining to his divorce or his unfriendly relationship with his ex-mother-in-law as a pre-requisite finding to a finding that service was not had on a "member of [plaintiff's] household". Moreover, there was no real need for plaintiff to use the term "false return" in his verdict directing instructions. As can be seen from our previous discussion of an acceptable form of instruction, the term "false return", in and of itself, is not essential and, perhaps, may not even be necessary to a proper submission and, thus, that term need not be used in the instructions. What was needed and what plaintiff failed to submit to the jury was the description of

the conduct reflected in the return. Such a submission would not be a submission of unnecessary evidentiary detail; rather, on the present record, it would be a submission of an ultimate fact. Admittedly, our courts have been unable to fashion precise, universally applicable definitions which explicitly differentiate evidentiary facts from ultimate facts and, thus, on a case by case basis, we determine "what [are ultimate facts] which must be submitted in a verdict directing instruction and what are evidentiary facts which, in detailed fashion, are not to be included . . .". *Penberthy v. Penberthy*, 505 S.W.2d 122, 130 (Mo.App. 1973). In the instant case, our analysis of plaintiff's theory and his instructions demonstrates that the deputy sheriff's conduct as described in the summons is an essential ultimate fact which must be submitted to the jury. Plaintiff's failure to submit this essential ultimate fact made his instructions erroneously misleading, and defendants had no duty to correct plaintiff's erroneous and misleading instructions in order to preserve their objections. *Van Brunt v. Meyer*, 422 S.W.2d 364, 369 (Mo.App.1967).

■ Since there is no applicable MAI instruction for a false return, the error in the instructions in question is not presumptively prejudicial as it would be if the instructions had deviated from an applicable MAI instruction. *Cf. Brown v. St. Louis Public Service Co.*, 421 S.W.2d 255, 259 (Mo. banc 1967); *see also*, Rule 70.02(c). Rather, the general rule controls, which places the burden of showing prejudice upon defendants. *Nibler v. Coltrane*, 275 S.W.2d 270, 277 (Mo. 1955); *Van Dyke v. Major Tractor & Equipment Co.*, 557 S.W.2d 11, 13 (Mo.App.1977). Defendants carried this burden. The instructions in question gave the jury a roving commission. Without direction, these instructions were, at best, misleading and confusing and, therefore, prejudicial. *E. g., Todd v. Watson*, 501 S.W.2d 48, 49–50 (Mo. 1973); *Dick v. Scott Const. Co.*, 539 S.W.2d 688, 691 (Mo.App.1976); *Moore v. Quality Dairy Co., supra* at 266. Accordingly, we reverse and remand.

Having disposed of plaintiff's arguments,[3] we now discuss those issues which may come up again on retrial.

Section 506.150 RSMo 1978 defines the proper method·for serving summons and a petition, and this statute requires that service be had on a defendant personally or by leaving a copy of the summons and petition at the defendant's "dwelling house or usual place of abode with some person *of his family* over the age of fifteen years . ." (emphasis added). In the instructions in question, plaintiff uses the phrase "a member of his household" rather than "some person of his family". Defendants argue this substituted phrase incorrectly advised the jury as to what constitutes valid service of process and, therefore, the instruction misled the jury.

■ The word "family", as used in the predecessor statute to § 506.150 RSMo 1978, has been defined as "a collective body of persons who *live* in one house, under one head or manager, including parents, children, and servants, and, as the case may be, lodgers or boarders" (emphasis added), *Colter v. Luke*, 129 Mo.App. 702, 108 S.W. 608, 609 (Mo.App.1908), and this definition has not been changed. Arguably, under this definition, to permit service of process on "a member of the household" may more accurately reflect the real meaning of the statute than literal compliance with the statute which would permit service on "some person of [the] family", even though that person did not live in the household. For example, if a relative while temporarily visiting your home were served with process intended for you, the service would be proper under a literal interpretation of the statute, but, under the meaning given to the term "family" by the court in the *Luke* case, this service would be improper. *L. J. Mueller Furnace Co. v. Dreibelbis*, 229 S.W. 240, 242 (Mo.App.1921). Thus, on the facts of the instant case, it may not have been

error to use the phrase "member of the household". However, in actions based upon a statutory violation, like the instant case, we believe it better practice to couch the verdict directing instruction in the language of the statute as much as sense and reason permits. *See Rooney v. Lloyd Metals Products Co.*, 458 S.W.2d 561, 570 (Mo. 1970); *Miles v. Gaddy*, 357 S.W.2d 897, 902 (Mo. banc 1962).

■ Defendants next complain that plaintiff added a paragraph to his punitive damage instruction, Instruction No. 6, in which the word "malice" is defined for the jury. Instruction No. 6 was patterned after MAI 10.01 and reads:

"If you find the issues in favor of plaintiff, and if you believe the conduct of defendant as submitted in Instruction Nos. 3 and 4 was willful, wanton, or malicious, then in addition to any damages to which you find plaintiff entitled under Instruction No. 5, you may award plaintiff an additional amount as punitive damages in such sum as you believe will serve to punish defendant and to deter him and others from like conduct.

The word 'malice' as used in this instruction, does not mean hatred, spite, and ill will, as commonly understood, but means the doing of a wrongful act intentionally without just cause or excuse."

Contrary to defendants' complaint, it was proper to add the definition of "malice" to this instruction, where, as here, that term is used only in that instruction. *Notes on Use*, MAI 16.01.

■ Defendants also contend that it was improper for plaintiff to refer to both verdict directing instructions, Instructions No. 3 and 4, in this one punitive damage instruction. Defendants' arguments in support of this contention are neither clear nor explicit. However, we are aware that in *Breece v. Jett*, 556 S.W.2d 696, 711 (Mo.

---

**3.** In the instant case, plaintiff's failure to submit essential ultimate facts cannot be cured by implying those facts from other required findings, *see e. g., Milliken v. Trianon Hotel*, 364 S.W.2d 71, 75 (Mo.App.1962), nor by reference to evidence in the record supporting such a

finding, *Vasquez v. Village Center, Inc.*, 362 S.W.2d 588, 595–596 (Mo.1962), nor by argument of counsel, *Snyder v. Chicago Rock Island & Pacific Railroad Co.*, 521 S.W.2d 161, 165 (Mo.App.1973). Understandably, plaintiff did not raise these arguments.

App.1977), in which the defendant was charged in two separate counts with seduction and conversion, we stated that it was error to submit one punitive damage instruction on both counts because the jury may have found the defendant's conduct malicious on only one of the two counts. In the present case, Instruction No. 6, plaintiff's punitive damage instruction, does refer to two different verdict directing instructions and, thus, indirectly does refer to two different Counts. But plaintiff's instruction differs from the instruction in the *Jett* case because plaintiff's instruction refers to only one course of conduct, and the instruction in the *Jett* case refers to two separate and distinct courses of conduct. Nonetheless, plaintiff's instruction may be somewhat confusing because it simply refers to the "conduct of the defendant". Since the specific conduct in issue is the conduct of a deputy sheriff, who is not a defendant and, in addition, since there are two defendants in this case, the plaintiff, on retrial, should more precisely define whose conduct is being referred to in his punitive damage instruction.

We point out one other matter which was only indirectly referred to by defendants. Various verdict forms were given to the jury, and, without reciting their content, the forms, as submitted, permit the jury to return a verdict for punitive damages against defendant Reliance Insurance Companies without returning a verdict for punitive damages against defendant Hoeh. The present record would not support such a verdict.

The order of the trial court denying defendants' motion on the issue of improper verdict directing instructions is reversed and the cause remanded.

DOWD, P. J., and CRIST, J., concur.